UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 19 CR 592 |
| | ) | Judge Sharon Johnson Coleman |
| JAVONTE STOKES | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPRESSION MOTION

The UNITED STATES OF AMERICA, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby responds to defendant Javonte Stokes' suppression motion and respectfully requests that this Court deny defendant's motion after a hearing. Defendant was a passenger in a car that was lawfully stopped, who fled the scene from that traffic stop which resulted in his arrest and the recovery of a loaded 9mm semiautomatic pistol from his pants pocket. The government anticipates that its evidence at a hearing (including body-worn camera videos) will establish that (1) the stop of the vehicle was supported by probable cause that a traffic violation had been committed; (2) the length of the stop (less than three minutes) had not exceeded the necessary time to conclude the investigation into the stop; and (3) the arrest of defendant – which occurred after defendant acknowledged possessing an open container of alcohol in the vehicle, after defendant attempted to interfere with the officers' investigation of the driver, after the defendant refused to exit the vehicle and instead began to roll the window up as a barrier between him and the officers, and after the defendant attempted to flee the

scene on foot – was lawful and proper and not in violation of the Fourth Amendment to the United States Constitution.

## BACKGROUND

*The Car Stop, Detainment, and Recovery*

The government anticipates that its evidence will establish the following:

On July 7, 2019 at about 2:30 a.m., Chicago Police Department (CPD) Officers Andrius Tkachuk and Kevin Gomez were on patrol in the 6th District when they observed a white four door sedan bearing Illinois license plate AW38554 driving towards them with its high beams on in violation of the City of Chicago Municipal Code. PO Tkachuk and Gomez activated their lights and curbed the vehicle.

PO Tkachuk approached on the driver's side of the vehicle and PO Gomez approached on the passenger side of the vehicle. PO Tkachuk asked the driver for his license and insurance. Additionally, PO Tkachuk asked the driver to roll down the windows of the car, which the driver did so voluntarily. PO Tkachuk observed two additional passengers – one in the front passenger seat (the defendant) and one in the back passenger seat – and an open bottle of Remy Martin alcohol in the front of the vehicle, to the left of the defendant. When PO Tkachuk asked to whom the bottle belonged, the defendant answered that the bottle belonged to him and, when asked, handed the bottle to PO Tkachuk. PO Tkachuk placed the half empty bottle of alcohol on the top of the vehicle. The driver continued to look for his license and insurance and handed an insurance card over to PO Tkachuk, but could not find his license. After some time, PO Tkachuk asked the driver to step out of the vehicle, at

which time the defendant stated to the driver, in sum and substance, "why you getting out of the car." The driver disregarded defendant's attempt to interfere and instead complied with the officer's command to exit the vehicle.

As PO Tkachuk spoke to the driver of the car, PO Gomez stood by the passenger side of the vehicle. When PO Gomez asked the defendant to step out of the vehicle, the defendant said, "No" and started to roll up the front passenger window. Knowing that (1) the defendant had admitted to having an open container of alcohol in the vehicle; (2) this area, which they regularly patrolled, was high in crime, violence, and gang activity, particularly in the very early morning hours; (3) defendant had questioned the driver leaving the vehicle; (4) defendant had just refused a lawful request to exit the vehicle; and (5) defendant attempted to roll up his window to create a barrier between himself and the officer, PO Gomez opened the passenger door of the vehicle and demanded that the defendant step out of the vehicle.

The defendant stepped out and turned to face the vehicle. Before PO Gomez could reach the defendant, the defendant ran. The defendant ran towards the police car then abruptly changed directions causing PO Gomez to bump into the police car. The defendant was tackled and caught by PO Tkachuk and Gomez a few feet from his original place of flight. While on the ground struggling with the defendant in an attempt to place handcuffs on him, defendant reached towards his front pants pocket. The officers were able to place the defendant in handcuffs. In all, the total time from the initiation of the traffic stop to the defendant's flight was less than three minutes.

While the defendant was on the ground, PO Tkachuk conducted a protective pat down of the defendant's back pockets and asked the defendant why he ran. The defendant did not answer. After backup arrived, PO Tkachuk lifted the defendant from the ground and conducted a protective pat down of the defendant's front area. Inside the defendant's front right pocket, PO Tkachuk recovered a loaded Taurus Model G2c 9 caliber semiautomatic handgun bearing serial number TLR63123. The defendant was placed under arrest.

### *Indictment and Suppression Motion*

Defendant initially was charged in Cook County with unlawful use of a weapon by a felon, transportation or possession of alcoholic liquor in a motor vehicle by a passenger, and resisting arrest. Subsequently, on July 18, 2019, a federal grand jury charged defendant with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).

On October 22, 2019, defendant filed a motion to suppress the firearm. R. 22. Specifically, defendant argues that (1) law enforcement had no probable cause to arrest the driver of the vehicle; (2) law enforcement had no probable cause to search the vehicle; and (3) anything beyond asking passengers to produce identification exceeded the bounds of the *Terry* stop. *Id*. The motion should be denied after a hearing because (1) though defendant has not challenged the reason for the stop, the stop was lawful; and (2) the firearm was legally recovered from the defendant's person, not the vehicle, after his flight from the traffic stop.

**ARGUMENT**

I. **The Government's Evidence Will Establish That the Officers Acted Lawfully during the Traffic Stop and in Pursuing Defendant.**

There are certain details cited and omitted from defendant's motion that affect the disposition of his motion. For example, in his motion, defendant fails to admit that there was an open bottle of alcohol in the car that the defendant acknowledged belonged to him. Defendant claims that the driver was handcuffed and that the handcuffing constituted an illegal arrest, yet he does not explain why that is relevant to the defendant's motion. *Id.* at 2. Defendant further omits that after defendant stated that he would not step out of the car, he proceeded to roll up the front passenger car window. Defendant then incorrectly states that "the officer turned [Stokes] towards the vehicle, pressed his body against Stokes back while grabbing and pressing his hands together in an attempt to place handcuffs on Stokes," a statement that is not corroborated by the body camera footage. *Id.* Defendant also fails to mention that after his flight from the legal traffic stop, he was searched and the firearm was found on defendant's person, inside defendant's front right pocket, and nothing at issue was recovered from the vehicle.

These claims and omissions, which are directly contrary to the government's evidence, necessitate a hearing to establish the facts that culminated in recovery of the firearm and ammunition from defendant's front pants pocket.

As outlined above, the government anticipates that its evidence will establish that the officers observed the vehicle, in which defendant was a passenger, commit a traffic violation resulting in their stop of the vehicle. *Whren v. United States*, 517

U.S. 806, 810 (1996) (finding that probable cause justifies stops and arrests, even for fine-only offenses). After stopping the vehicle, the officers temporarily detained the driver and the passengers of the vehicle while the stop was ongoing. *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). While in the midst of the traffic stop, the officers ordered defendant out of the vehicle. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997) (allowing law enforcement to order passengers out of the vehicle pending completion of the stop) and *Pennsylvania v. Mimms*, 434 U.S. 106 (19977) (allowing officers making a traffic stop on probable cause and finding that the stop may require a car's occupants to get out of the vehicle). While the officers were conducting necessary actions related to the traffic stop, the defendant fled, the officers gave chase, tackled the defendant, and handcuffed him.

In *United States v. Yancey*, 928 F.3d 627 (7th Cir. 2019), law enforcement pulled over a vehicle, in which the defendant was a passenger, because they recognized the driver as a person that may have had an outstanding warrant. After confirming that the driver had a warrant, law enforcement arrested the driver and sought to determine what to do with the car. Law enforcement recognized the defendant as a person that was known to be armed and dangerous. Law enforcement asked the defendant to step out of the vehicle to pat him down for weapons. However, before law enforcement could pat down the defendant, the defendant fled. Law enforcement gave chase, tackled the defendant, and found a firearm on his person. *Id.* at 628-30.

The Court found that it would not reach the question of whether the officers had reasonable suspicion to pat the defendant down for weapons because he "fled before the [officer] could conduct the pat down," reasoning that "no pat down means no need for reasonable suspicion [defendant] was armed and dangerous." *Id.* at 630. Instead, as here, defendant's flight from a lawful traffic stop itself constituted an arrestable offense (resisting a peace officer) for which a pat down incident to that arrest was justified. Here, though the officers would have been justified in conducting a pat down of the defendant at the time he was commanded out of the car, such an evaluation is not necessary as the defendant fled before the pat down could be conducted. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("minor criminal offenses" occurring in the officer's presence may be subject to arrest even if those offenses are only subject to a fine); *United States v. Burtton,* 599 F.3d 823, (8th Cir. 2010) (arrest and pat down of passenger in car for open alcohol violation—a mere infraction not subject to imprisonment—is permissible under Fourth Amendment); *Swanigan v. Trotter*, 645 F.Supp.2d 656, 676 (N.D.Ill. 2009) (arrest of driver for failure to produce proof of insurance—a non-jailable petty offense—permissible under Fourth Amendment).

Moreover, in upholding the denial of the defendant's motion to suppress, the Court stated that it "need only examine whether a lawful investigatory stop remained in progress that justified keeping [defendant] at the scene" at the time he fled. *Yancey*, 928 F.3d at 630. In making that decision, the court held that the traffic stop remained lawful as long as the "mission" of the stop had not yet been completed. *Id.*

*See also California v. Hodari D.,* 499 U.S. 621, 625-26 (1991) (defendant's flight from a *Terry* stop broke off any arguable "seizure" such that the subsequent recovery of evidence obtained after his flight was not subject to the exclusionary rule).

In the case at hand, prior to the defendant's flight, the officers (1) had not yet determined the identity of the driver of the vehicle; (2) had not yet determined if the driver had a legally issued license to operate the vehicle; (3) had not yet determined whether the vehicle was properly insured; (4) had not yet determined whether to issue any citation to the driver for operating the vehicle with its bright lights on or failing to produce documentation; and (5) had not yet resolved the issue of the open container of alcohol in the car. A lawful traffic stop thus remained in progress at the time of defendant's flight, which was a mere three minutes after the initial stop of the vehicle. Indeed, none of the purposes of the traffic stop had been accomplished by the time he fled. The officers had legal justification to detain defendant, prior to his flight, and they had justification to arrest him and search him incident to his arrest after he fled. The ensuing recovery of the gun thus was legal.

**CONCLUSION**

For the aforementioned reasons, the government respectfully requests that the Court set a suppression hearing and after that hearing deny defendant's motion.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   */s/ Albert Berry III*
      ALBERT BERRY III
      COREY RUBENSTEIN
      Assistant United States Attorney
      219 S. Dearborn Street
      Chicago, Illinois 60604

Date: November 12, 2019