# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 19-cr-592-1 ) |
| JAVONTE STOKES, | ) Judge Sharon Johnson Coleman ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

The defendant, Javonte Stokes, is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Stokes moves to suppress the evidence obtained during a search of his person, which arose out of a traffic stop on July 7, 2019. For the following reasons, the Court denies Stokes' motion [22].

**Background**

Unless specifically stated, the parties do not dispute the following facts. On July 7, 2019, at about 2:30 a.m., Stokes was in the passenger seat of a white Mercedes sedan headed down 76th Street. Chicago Police Department (CPD) Officers Andrius Tkachuk and Kevin Gomez were patrolling this area and saw that the vehicle had its high beams on. The officers curbed the vehicle for this traffic violation. Officer Tkachuk stood outside the driver's side, while Officer Gomez stood on the passenger's side. When Tkachuk told the driver to roll down his tinted windows, he observed an open container of alcohol and asked whose it was. Stokes admitted that it was his and handed it to Tkachuk upon request.

Tkachuk asked the driver for his license and proof of insurance, but the driver was unable to produce a license. Tkachuk ordered the driver to step out of the vehicle and handcuffed him. On the passenger side, Gomez asked Stokes to exit the vehicle and Stokes replied, "No." Gomez

opened the passenger door from the outside, pointed his gun at Stokes, and repeated his demand; this time Stokes complied.

Gomez holstered his weapon as Stokes got out and faced the vehicle. Stokes testifies that he felt Gomez grab his wrists, while Gomez testifies that he did not touch Stokes at this time. Nonetheless, during this interval, Stokes ran—first in one direction, then another. A few feet away, Gomez tackled Stokes to the ground and Tkachuk assisted with handcuffing him. Tkachuk then patted Stokes down, at which time he discovered that Stokes had a firearm in his front pants pocket.

**Legal Standard**

It is well established that police officers have constitutional authority to conduct investigatory stops without a warrant when they have a reasonable suspicion of criminal activity, supported by articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Street*, 917 F.3d 586, 593 (7th Cir. 2019) (citation omitted). A reasonable suspicion is "a particularized and objective basis for suspecting" that the stopped person has broken the law. *United States v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015) (citation omitted). While a less stringent standard than probable cause, reasonable suspicion must consist of more than a hunch. *Street*, 917 F.3d at 593 (citation omitted). To determine whether an investigative stop was reasonable, the first inquiry is whether the officers' action was initially justified, and the second is "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Glenna*, 878 F.2d 967, 971 (7th Cir. 1989). To succeed against a motion to suppress, the government must establish reasonable suspicion for a *Terry* stop by a preponderance of the evidence. *See United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013); *United States v. Longmire*, 761 F.2d 411, 418 (7th Cir. 1985).

**Analysis**

The traffic stop that occurred on July 7, 2019 was lawful at its inception. Brief traffic stops are analogous to investigatory stops. *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). Furthermore, if an officer has probable cause to believe that a motor vehicle violation has taken place, traffic stops and arrests are justified even if the offense is only punishable by a fine. *United States v. Johnson*, 874 F.3d 571, 573 (7th Cir. 2017) (citation omitted). Stokes argues that minor traffic offenses, which are not misdemeanors under Illinois law, do not authorize arrest; this is not true. *See Jackson v. Parker*, 627 F.3d 634, 637-39 (7th Cir. 2010). The vehicle in which Stokes was a passenger failed to dim its bright headlights as required by the Municipal Code of Chicago § 9-40-090. Officers Tkachuk and Gomez properly curbed the vehicle pursuant to this probable violation of the law. Implications about their intent to engage in an unauthorized search are not legally relevant when their actions were objectively reasonable; "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

The stop was also lawful in its duration and scope. The matter lasted only a few minutes. The officers quickly discovered an open container of alcohol in the vehicle, and the driver was unable to produce a license. The officers directed the driver to step outside the vehicle, patted him down, and handcuffed him while they resolved the question of his identity. Stokes contends in his motion to suppress that this was an illegal arrest of the driver, thereby altering the nature of what had formerly been a *Terry* stop. To the extent Stokes claims that handcuffing the driver was unconstitutional, he lacks standing to make this argument. *See Alderman v. United States*, 394 U.S. 165, 171-72, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) (stating that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the

3

search itself"); *United States v. Powell*, 929 F.2d 1190, 1194-95 (7th Cir. 1991) (passengers have standing to object to vehicle stop, but not to vehicle search).

Stokes himself did not endure any restraint or search justifying suppression of the evidence. If officers stop a vehicle, they may require the occupants to exit the vehicle as part of the stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In line with this ruling, the officers instructed Stokes to exit the vehicle. Stokes refused to do so, at which time Gomez pointed his gun at Stokes and repeated the command. This Court need not determine whether brandishing a service weapon constituted excessive force; even if it did, the use of excessive force during an otherwise-lawful search or seizure does not subject evidence to the exclusionary rule. *See United States v. Watson*, 558 F.3d 702, 704-05 (7th Cir. 2009).

The officers only restrained Stokes after he gave them reasonable suspicion to do so. Stokes testifies that he voluntarily exited and faced the vehicle, and moments later, he fled. Flight may engender the reasonable suspicion necessary to justify an investigatory stop. *See Illinois v. Wardlow*, 528 U.S. 119, 124-25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). The officers tackled, restrained, and frisked him while repeatedly asking "why he ran." Handcuffing an individual during a *Terry* stop is permissible when there is a risk of flight. *United States v. Howard*, 729 F.3d 655, 661 (7th Cir. 2013).

Additionally, officers may perform a protective frisk during a *Terry* stop when they have an articulable suspicion that an individual might be armed or dangerous. *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010). Stokes' flight, the time of night, the presence of alcohol in the vehicle, Stokes' verbal refusal to open the door when asked, and his posture of keeping the front of his body away from the officers all contribute to a reasonable suspicion that he may have been armed. *See id.* at 894-95. The officers found Stokes' unauthorized firearm as a result of this pat-down and arrested him.

4

In the alternative, if the acts of tackling, handcuffing, and frisking Stokes were intrusive enough to rise to the level of an arrest, the arrest was proper. Stokes fled from the scene of a lawful *Terry* stop, which is to say that he resisted a peace officer in violation of Illinois law. *See* 720 ILCS 5/31-1; *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 760 (7th Cir. 2008) (fleeing a *Terry* stop and struggling while being handcuffed constitutes resisting a peace officer). Resisting a peace officer is a misdemeanor which legally subjects an individual to arrest. 720 ILCS 5/31-1; 65 ILCS 5/11-1-2.

In sum, the stop was justified by reasonable suspicion at its inception because the driver failed to dim his bright headlights or produce identification. It was reasonable in scope because requiring individuals to exit a vehicle during a traffic stop is a valid law enforcement decision, any arguable use of excessive force in enacting this decision would not trigger the exclusionary rule, and any restraint of the driver had no bearing on Stokes. Handcuffing Stokes was constitutional because he fled the scene, giving rise to reasonable suspicion that he had engaged in illegal activity, and frisking him was constitutional because the totality of the circumstances suggested that he may be armed. Even if restraining Stokes and patting him down went beyond the scope of a *Terry* stop, his flight constituted a separate misdemeanor which justified an arrest.

**Conclusion**

For the foregoing reasons, the Court denies Stokes' motion to suppress the evidence recovered from his person on July 7, 2019 [22].

**IT IS SO ORDERED.**

Date: 3/18/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge